BOWE *et al. v.* THE GRESS LUMBER COMPANY, for use.

| | |
|---|---|
| 86 | 17 |
| 108 | 147 |
| 86 | 17 |
| 115 | 27 |
| 115 | 111 |
| 86 | 17 |
| e127 | 534 |

1. Where one has brought an action in the name of another as suing for his use, without first obtaining the consent of the plaintiff in whom is the legal title to the cause of action, the latter may ratify at any time whilst the action is pending, and such ratification will relate back to the commencement.

(*a*) The fact of ratification appearing, an amendment to the declaration making the plaintiff a party is surplusage, he being already a party.

(*b*) When the bill of particulars annexed to the declaration is improperly headed, the defect is amendable and is cured by verdict.

2. In an action for goods sold and delivered, if it appears from the evidence that the articles set out in the bill of particulars were furnished under the contract, and that the items are correct, due and unpaid, a *prima facie* case is made for recovery

v 86-2

3. The statute for bringing cases to this court contemplates that no evidence shall be brought up which is clearly immaterial. When this rule is violated and the material is blended and intermixed with the immaterial so that the labor of selection and separation is cast upon the court instead of being performed by counsel, the verdict will generally be treated as correct in so far as it depends upon a state of facts to support it. .
October 10, 1890.

Actions. Ratification. Amendment. Parties. Practice. Evidence. Verdict. Before Judge Van Epps. City court of Atlanta. March term, 1890.

Reported in the decision.

J. B. Goodwin and Arnold & Arnold, for plaintiffs in error.

Candler, Thomson & Candler, *contra*

Bleckley, Chief Justice.

The action was brought in 1888 by petition, the petition importing on its face that the Gress Lumber Company, a corporation under the laws of this State, sued for the use of A. B. Steele. It alleged that the defendants below (plaintiffs in error here) were indebted to the petitioner in the sum of $503.00, besides interest, on an account "as will more fully appear from the bill of particulars hereto attached." A bill of particulars was attached, headed: "Mr. W. F. Bowe, Atlanta, bought of A. B. Steele." The petition contained a second count, as follows :

"Petitioners further show that said W. F. Bowe and M. E. Maher are indebted to it, for the use of A. B. Steele, in the further sum of five hundred and three and sixty-one-100 dollars, besides interest, for that, heretofore, to wit, on the ———— day of July, 1886, the said defendants, in the name of W. F. Bowe, having the contract for certain work at the U. S. barracks, in said county, made a contract with said Gress Lumber Company to furnish a certain bill of lumber for the said barracks, it being understood at the time between the parties that A. B. Steele was to furnish one half of said

lumber, and that both defendants were contracting for and were to be responsible for the same, although it was to be 'billed' in the name of W. F. Bowe only. That under said contract and agreement by and between said defendants on the one side, and said Gress Lumber Company and A. B. Steele on the other, said Steele furnished to said Maher and Bowe, billing the same in the name of W. F. Bowe, lumber as shown in the account hereto attached as a bill of particulars under the first count; thereby said defendants became indebted to petitioners, for the said use, in the said sum of five hundred and three and 61-100 dollars, which said sum they refuse to pay."

Defendants having pleaded specially that neither of them made any contract or had any relations with A. B. Steele touching the lumber, the price of which was sued for, and that Steele had no authority or consent of the Gress Lumber Company to bring or prosecute this suit in the company's name for his use, the special plea was tried, by consent, before the judge without a jury. After hearing evidence, the judge sustained the plea, holding that no authority of the company had been obtained; and was about to dismiss the petition, but did not do so, allowing the plaintiff to amend, the amendment filed being as follows: "And now comes the plaintiff and shows that the Gress Lumber Company consents to and ratifies the bringing of said action, and prays to be made a party plaintiff (suing for the use of A. B. Steele) to said action." Mr. Gress, the president of the company, being present in court, assented to this amendment, and it was allowed over the objection of the defendants. The action was afterwards tried and a verdict rendered for the plaintiff. The defendants moved for a new trial, and the motion was overruled.

1. It is manifest that the corporation was the plaintiff in the action from the beginning; hence that portion of the amendment making it a party was super-

fluous. All that was needed was for the company to ratify the action and allow it to proceed, which was done by the president of the company, who appeared in open court for the purpose. The ratification related back to the commencement of the action, and gave as much authority for the use of the corporate name by Steele as if he had obtained permission to use the name for his benefit before instituting the action. This is the general rule as to the effect of ratification. *Perry* v. *Hudson*, 10 *Ga*. 362. Moreover, the second count in the petition indicates that there was an equitable element in the contract referred to in favor of Steele, who was to furnish one half of the lumber for certain work at the United States barracks, for which the defendants were both to be responsible. Under this allegation, it is not unlikely that Steele had a right to use the name of the corporation on the sole condition of indemnifying it against costs. Be this as it may, however, we think there was no obstacle to prosecuting the action after the president of the company assented to and ratified it. It was not a void action, but on its face was good, and was capable of being kept good, and was kept so, by ratification. The heading to the bill of particulars is only an awkwardness, and was amendable so as to make the same harmonious with the terms of the petition. And as the matter is one of form, rather than of substance, it is immaterial that no amendment of it has yet been made. Such a defect was curable, and is cured, by the verdict. In *Barron* v. *Walker*, 80 *Ga*. 121, a new cause of action was sought to be brought into the declaration; whereas here the cause of action remained the same, and was alleged in the petition as originally filed to be in favor of the original party plaintiff (the corporation), who sued in behalf of the usee both then and now claiming the fruits of the action. The only material new matter brought into the plead-

ing is the ratification, and that comes in avoidance of the defendants' special plea. We think it does avoid it effectually. That it did not come too late is manifest, for the court had passed no order dismissing or disposing of the case, and the allowance of the amendment followed at once upon the announcement that the plea was sustained by the evidence. No final judgment was rendered terminating the action.

2. The cause was tried before the jury on pleas going to the merits of the controversy. The court charged the jury: "If the plaintiff has shown to your satisfaction that the lumber embraced in the account sued on was furnished to the defendants under the contract mentioned in the declaration, and that the items of that account are correct, due and unpaid, he is entitled to recover, unless there is something presented in the pleas of the defendants to obviate that result." This charge is complained of as not holding the plaintiff to the burden of showing that the lumber furnished was in accordance with the terms of the contract, and delivered within the time stipulated in the contract. It seems to us that a fair construction of the court's language implies both these elements. If the lumber was furnished under the contract, and the items of the account are correct, due and unpaid, it would seem to us that the contract was in all respects complied with, and we can have little or no doubt that the jury understood the charge correctly.

3. Whether the jury arrived at a right result or not, we cannot possibly ascertain with perfect accuracy without reading and studying a mass of evidence which is quite voluminous, and which is capable of being condensed, so far as it is material, within manageable compass. The whole brief has been brought to this court without separating the material from the immaterial, and in this respect the act of 1889 has not been com-

plied with, either in letter or in spirit. We are quite willing to examine all the evidence in any case which is material, if counsel will take the trouble to eliminate that which is immaterial. But when both are left intermingled, so that we have to read all the trash and rubbish which drifts into the case during the trial and cull the material evidence out of it, we shall generally take it for granted that the jury and the court below have performed their functions in weighing the evidence as a whole correctly. We do so in this instance.

The head-notes are a part of this opinion.

*Judgment affirmed.*